## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KUMAR HATHIRAMANI,** | Civ. No. 2:01-cv-430 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,** | |
| **Defendant/Third-Party Plaintiff.** | |

### WILLIAM J. MARTINI, U.S.D.J.

This matter comes before the Court on the motion of Plaintiff Kumar Hathiramani to reopen the case and cancel the record of judgment pursuant to N.J.S.A. § 2A:16-49.1, ECF No. 60, and the motion of Defendant/Third-Party Plaintiff, The Northwestern Mutual Life Insurance Company ("Northwestern"), to renew and revive the judgment and lien pursuant to N.J.S.A. § 2A:14-5, ECF No. 71. For the reasons set below, Hathiramani's motion is **GRANTED** and Northwestern's motion is **DENIED**.

### I.    BACKGROUND

The current dispute between the parties relates to the interaction between three separate cases involving Plaintiff Kumar Hathiramani: (1) state criminal proceedings brought against Hathiramani in May 2003 (the "Criminal Proceedings"); (2) the instant case, which was commenced by Hathiramani and removed to federal court in January 2001 (the "Federal Proceedings"); and (3) Hathiramani's Chapter 7 bankruptcy proceedings, which were commenced in June 2015 in the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Proceedings"). The Court will provide a brief chronological overview of the relevant procedural history for these cases.

On or around January 2001, Hathiramani commenced the Federal Proceedings against Northwestern for the payment of benefits and other relief. ECF No. 58. Northwestern subsequently removed the action to federal court and filed a Counterclaim against Hathiramani for the repayment of benefits that were fraudulently obtained.[1] ECF Nos. 1, 4, 58.

---

[1] Due to the age of the Federal Proceedings, documents filed on the docket before March 10, 2004 are not immediately accessible. To the extent the contents of these filings are relevant to the instant dispute, the Court relies

1

On May 2, 2003, while the Federal Proceedings were ongoing, Hathiramani pleaded guilty before the Superior Court of New Jersey to a two-count accusation charging Hathiramani with one count of Theft by Deception and one count of Falsifying or Tampering with Records. ECF No. 67-2, Ex. 2. The accusation alleges that Hathiramani deceived both the Social Security Administration and Northwestern to obtain over $75,000.00 in disability benefits for which he was not entitled. *Id.* at Ex. 3. A transcript of the plea proceedings indicates that as part of the plea agreement, the parties agreed to a $15,000 civil fine in addition to a restitution agreement. ECF No. 67-4, Ex. A at 5:5-11. Additionally, the prosecutor informed the judge that Hathiramani "agree[d] to make full restitution to the Social Security Administration and [Northwestern] in the amount of approximately 1.6 million dollars" and that "civil complaints now pending in Federal Court will be dismissed for the amount stated herein on or about the time of sentencing." *Id.* at 5:12-16, 20-23. Defense counsel, expanding on the prosecutor's remarks, stated that the parties would be "be putting on the record the agreement that [they had] reached in regard to restitution[.]" *Id.* at 6:7-10. The prosecutor agreed, stating that the parties had "discussions with respect to the enormous amount of restitution" and planned to finalize their agreement that Hathiramani would make a $10,000.00 payment at the time of sentencing in addition to monthly payments of 15% of his income until his financial condition improved. *Id.* at 6:16-7:1.

On December 9, 2003, Hathiramani and Northwestern reported to this Court that they had settled the Federal Proceedings, and a dismissal order was issued without prejudice to re-opening the case if the settlement was not consummated within 90 days. ECF Nos. 54-55. On March 29, 2004, in response to a show cause order, the parties reiterated that they had "worked out" the settlement agreement. ECF No. 57.

On March 19, 2004, Hathiramani was sentenced in the Criminal Proceedings. ECF No. 67-2, Ex. 2. As part of his sentence, Hathiramani was ordered to pay a $15,000.00 civil fine payable to the Office of Insurance Fraud Prosecutor and restitution in an amount to be ordered by a consent judgment. *Id.* Subsequently, on May 7, 2004, the state court issued an Order of Restitution (the "May 2004 Criminal Restitution Order") to confirm the parties' restitution agreement. ECF No. 67-4, Ex. B. The order states that the State of New Jersey and Hathiramani agreed to the payment of restitution in the amount of $1,593,709.10, payable to the Social Security Administration in the amount of $131,476.70 and to Northwestern in the amount of $1,462,232.40. *Id.* at 1-2. The order also lays out a payment plan agreed upon between the state and Hathiramani until the payment of restitution to all parties has been received in full. *Id.* at 2.

On June 29, 2004, this Court signed a judgment (the "June 2004 Judgment"), along with a stipulation and order discontinuing the Federal Proceedings. ECF Nos. 58-59. The judgment states:

---

on the parties' undisputed representations and the docket text. The Court also takes judicial notice of the Criminal and Bankruptcy Proceedings. *See Keyes v. Nationstar Mortg.*, LLC, No. 120CV02649, 2020 WL 6111036, at *5 (D.N.J. Oct. 16, 2020).

This action having been brought by Kumar Hathiramani against [Northwestern] for payment of benefits and other relief, [Northwestern] having filed a Counterclaim against Kumar Hathiramani for repayment of benefits fraudulently obtained, Kumar Hathiramani's Complaint having been dismissed without prejudice by Order filed on November 19, 2001, and Kumar Hathiramani having agreed to the entry of a non-dischargeable judgment against him in the amount of $1,600,000.00; it is hereby ORDERED AND ADJUDGED that the defendant and counter-claimant, [Northwestern] shall have a judgment entered against plaintiff Kumar Hathiramani in the amount of $1,600,000.00. This judgment is for monies fraudulently obtained by Kumar Hathiramani and owed by him to [Northwestern]. This judgment shall not be dischargeable in bankruptcy.

ECF No. 58. On August 12, 2011, the June 2004 Judgment was filed with the State of New Jersey in the amount of $1,510,000.00 after credits. ECF No. 60-3.

On June 15, 2015, Hathiramani commenced the Bankruptcy Proceedings by filing a Voluntary Petition in the U.S. Bankruptcy Court for the District of New Jersey. ECF No. 60-4. "Northwestern Mutual, 720 E. Wisconsin Ave., Milwaukee, WI 53202" is listed as a creditor in both the creditor matrix and Schedule F of Hathiramani's bankruptcy petition, though the amount of claim is scheduled as "0.00" dollars. *Id.* at 9, 25. By letter dated June 23, 2015, Northwestern informed Hathiramani's counsel that it received notice of the Bankruptcy Proceedings, but that it should be removed from the list of creditors because it could not find "policies in force owned by [Hathiramani] or any record of business with other areas of [the] company." ECF No. 67-4, Ex. D. The letter asked Hathiramani's counsel to contact the company if they had any information that would help Northwestern locate the relevant records. *Id.* Receiving no response from Hathiramani's counsel, Northwestern sent two additional letters in September 2015 in response to other notices it received relating to the Bankruptcy Proceedings, explaining that it had "taken no action in connection with [the] matter" because it still could not locate any relevant records pertaining to Hathiramani and reiterating that Northwestern should be removed from the list of creditors because a "debtor/creditor relationship" did not exist. *Id.* On February 11, 2016, Hathiramani was granted a discharge of his debts under 11 U.S.C. § 727, ECF No. 60-6, and the Bankruptcy Proceedings were closed soon thereafter, *In Re Hathiramani*, No. 15-21203 (Bankr. D.N.J. Feb. 16, 2016).

## II.   PROCEDURAL HISTORY

On February 14, 2024, Hathiramani filed a motion to reopen the Federal Proceedings and remove the June 2004 Judgment pursuant to N.J.S.A. § 2A:16-49.1 ("Motion to Reopen"). ECF No. 60. Northwestern filed an opposition on April 10, 2024, ECF No. 67, and Hathiramani replied on May 1, 2024, ECF No. 70. On June 11, 2024, Northwestern separately filed a motion to renew and revive the June 2004 Judgment pursuant to N.J.S.A. § 2A:14-5 ("Motion to Renew"). ECF No. 71.

3

## III.   LEGAL STANDARD

Hathiramani brings his Motion to Reopen pursuant to N.J.S.A. § 2A:16-49.1, which states, in relevant part, that:

> At any time after 1 year has elapsed, since a bankrupt was discharged from his debts, pursuant to the acts of Congress relating to bankruptcy, he may apply, upon proof of his discharge, to the court in which a judgment was rendered against him, or to the court of which it has become a judgment by docketing it, or filing a transcript thereof, for an order directing the judgment to be canceled and discharged of record.

"New Jersey caselaw establishes that the purpose of [S]ection 2A:16-49.1 is to assure that judgments 'intended to be discharged under federal bankruptcy law will not continue to cloud the marketability of title to property owned by the debtor.'" *Hunter Bros., Inc. v. Delmonte Farms LLC*, No. CV 12-6197, 2024 WL 1795359, at *2 (D.N.J. Apr. 25, 2024) (citations omitted). "[T]he determinative question on a motion to discharge a judgment under this statute is 'whether or not the lien was subject to be discharged or released under the provisions of the Bankruptcy Code.'" *Id.* "Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995).

## IV.   ANALYSIS

Northwestern makes three arguments in opposition to Hathiramani's Motion to Reopen. First, Northwestern argues that the June 2004 Judgment is not subject to discharge under 11 U.S.C. § 523(a)(7). Second, Northwestern asserts that Hathiramani agreed that the June 2004 Judgment would not be dischargeable. Third, Northwestern contends that it did not have effective notice of the Bankruptcy Proceedings. The Court will address each argument in turn.

### A.  Exception from Discharge under § 523(a)(7)

Northwestern first argues that the June 2004 Judgment is automatically excepted from discharge under 11 U.S.C. § 523(a)(7), which states:

> A discharge under [11 U.S.C. § 727] does not discharge an individual debtor from any debt . . . to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than [certain] tax penalt[ies.]

Debts subject to § 523(a)(7) are "automatically nondischargeable," meaning that creditors do not need to object to the discharge of a debt on this basis for it to be excepted.[2] *Kelly v. Robinson*, 479 U.S. 36, 42 n.4 (1986). Section 523(a)(7) has been interpreted to

---

[2] "[B]ankruptcy courts and nonbankruptcy courts alike are vested with concurrent jurisdiction over nondischargeability proceedings arising under Bankruptcy Code § 523(a)(7)." *Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir. 2002); *see also Ellis v. Westinghouse Elec. Co.*, LLC, 11 F.4th 221, 229 (3d Cir. 2021).

except from discharge "any condition a state criminal court imposes as part of a criminal sentence[,]" including restitution orders. *Id.* at 50, 53. The Third Circuit has held that this exception includes "all state criminal restitution orders, regardless of whether the payments are made to governmental units or individuals." *In re Thompson*, 418 F.3d 362, 366 (3d Cir. 2005).

Relying on *Kelly* and *Thompson*, Northwestern contends in its opposition brief that the June 2004 Judgment should likewise be excepted from discharge under § 523(a)(7) because "the payment of restitution was contemplated by, and an integral part of, Plaintiff's Judgment of Conviction" in the Criminal Proceedings. Opp. Br. 9. However, the record does not suggest that the June 2004 Judgment was an "integral part of" Hathiramani's sentence. *See In re Clark*, 222 B.R. 114, 118 (Bankr. N.D. Ohio 1997) (holding that a civil consent judgment that referred to a criminal restitution order was nondischargeable only to the extent the civil judgment was incorporated into the criminal restitution order). While the transcript of Hathiramani's plea hearing suggests that the parties were aware of the Federal Proceedings during their plea negotiations, neither the Judgment of Conviction nor the May 2004 Criminal Restitution Order mentions the June 2004 Judgment or the Federal Proceedings at all. The June 2004 Judgment similarly fails to mention the Criminal Proceedings or incorporate the Judgment of Conviction or the May 2004 Criminal Restitution Order in its text. As such, the June 2004 Judgment is wholly separate from the Criminal Proceedings, and as such, cancelling the June 2004 Judgment would in no way "interfere with New Jersey's criminal restitution order." *Thompson*, 418 F.3d at 368.

Additionally, a finding that the June 2004 Judgment is not excepted from discharge under § 523(a)(7) would not elicit the federalism issues identified by the *Kelly* and *Thompson* Courts. *See Kelly*, 479 U.S. at 49 (1986) (recognizing "that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief"); *Thompson*, 418 F.3d at 363 (noting the "long tradition of courts' unwillingness to discharge monetary obligations that form part of a state criminal judgment when applying federal bankruptcy statutes"). First, unlike the criminal restitution orders at issue in *Kelly* and *Thompson*, the June 2004 Judgment was issued by a federal court and is civil in nature. Additionally, the judgment does not serve the state's penal goals of deterrence, punishment, or rehabilitation. *Kelly*, 479 U.S. at 49-53. Instead, it explicitly states that it is "for monies fraudulently obtained by Kumar Hathiramani and owed by him to [Northwestern]," suggesting that the judgment "turn[s] on the victim's injury," *Kelly*, 479 U.S. at 52, and serves as "compensation for actual pecuniary loss," which is not excepted under § 523(a)(7). Further, Northwestern consented to both the imposition of the judgment and the amount awarded, creating "a debtor-creditor relationship between the persons making and receiving restitution." *Kelly*, 479 U.S. 36 at 46 (quoting *State v. Mosesson*, 356 N.Y.S.2d 483, 484 (Sup. Ct. 1974)).

Based on these considerations, the Court finds that the June 2004 Judgment is not excepted from discharge under § 523(a)(7).

## B. Parties' Agreement Regarding Non-Dischargeability

Northwestern next argues that Hathiramani agreed that the June 2004 Judgment would not be dischargeable. Opp. Br. 9-11. While the June 2004 Judgment does explicitly state that Hathiramani "agreed to the entry of a *non-dischargeable* judgment against him" and that the judgment "shall not be dischargeable in bankruptcy[,]" ECF No. 58 (emphasis added)[,] it was issued years before Hathiramani filed his bankruptcy petition in 2015. Courts, including those in this district, have consistently found pre-petition stipulations regarding the non-dischargeability of a debt to be unenforceable on public policy grounds. *See In re Kroen*, 280 B.R. 347, 351 (Bankr. D.N.J.2002) (observing that "such waivers are void, offending the policy of promoting a fresh start for individual debtors"); *see also In re Mercer*, No. 13-30006, 2013 WL 3367253, at *4 (Bankr. M.D. Ala. July 5, 2013) (collecting cases and noting that "[i]t is well established that prepetition stipulations of non-dischargeability are not enforceable"). Northwestern cites to no authority suggesting that such a stipulation would otherwise be enforceable in the instant case. Thus, the Court finds the non-dischargeability stipulation in the June 2004 Judgment void on public policy grounds.

## C. Notice of Bankruptcy Proceedings

Lastly, Northwestern argues that it did not have adequate notice of the Bankruptcy Proceedings because Schedule F to Hathiramani's bankruptcy petition fails to list Northwestern's counsel and incorrectly lists the amount of claim for the June 2004 Judgment as $0.00. Opp. Br. 5, 15. Due to these inaccuracies, Northwestern moves for relief under 11 U.S.C. § 523(a)(3) and Rule 60(b)(6).[3] Opp. Br. 15.

Section 523(a)(3)(A)[4] states that:

> A discharge under [11 U.S.C. § 727] does not discharge an individual debtor from any debt . . . (3) *neither listed nor scheduled* under section 521(a)(1) of this title, with the name . . . of the creditor to whom such debt is owed, in time to permit-- (A) . . . timely filing of a proof of claim, unless such creditor had *notice or actual knowledge* of the case in time for such timely filing[.]

(emphasis added). "While the Bankruptcy Code does not define what constitutes 'actual knowledge' under the statute, it has been defined by courts as positive knowledge

---

[3] Northwestern states that it is "not seeking a denial of the Plaintiff's discharge under Section 727(a)(4)(A)," which excepts debtors from being granted a discharge where the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" Opp. Br. 13. n.5.

[4] Section 523(a)(3)(B) relates to debts arising from intentional torts that are set out under paragraphs (2), (4), and (6) of § 523(a). Because Northwestern does not seek a determination of dischargeability under these paragraphs in its opposition brief, § 523(a)(3)(B) does not apply here. *See* Advisory Comm. Note, Fed. R. Bankr. P. 4007 ("The bankruptcy court has exclusive jurisdiction to determine dischargeability of [§ 523(a)(2), (4), and (6)] debts.").

of a fact . . . such that a creditor is apprised that a bankruptcy case was commenced and where said case is pending." *In re Smalis*, No. AP 14-2075, 2015 WL 3745352, at *8 (Bankr. W.D. Pa. June 12, 2015).

The Court finds that relief is not warranted under § 523(a)(3)(A). First, Northwestern's company name and address are listed on both the creditor matrix and Schedule F to Hathiramani's bankruptcy petition. ECF No. 60-4 at 9, 25. Additionally, a "Notice of the Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" document was served on Northwestern by the Bankruptcy Noticing Center via first class mail on June 18, 2015. ECF No. 60-5 at 5. Northwestern does not allege that it did not receive these notifications or that the name and address listed on the petition were incorrect. Despite Northwestern's contentions that the petition included an inaccurate amount of claim and failed to list Northwestern's counsel, these errors are immaterial to a determination of whether a debt was properly scheduled under § 523(a)(3)(A). *See In re Venuto*, 629 B.R. 331, 338 (Bankr. D. Mass. 2021) (stating that for § 523(a)(3) applicability, "courts have not focused on whether a debtor adequately described [the] type of debt [but] whether the name and address submitted by the debtor 'contain[s] information reasonably calculated to provide notice to the creditor'" (citation omitted)); *In re DiGeronimo*, 354 B.R. 625, 634 n.9, 641 n.18 (Bankr. E.D.N.Y. 2006) (holding that where "debts owing to a party are scheduled in a petition (even if scheduled erroneously in amount) and where a party has actual notice and knowledge of the bankruptcy case, Section 523(a)(3) does not apply").

Further, it is clear that Northwestern received actual notice of the Bankruptcy Proceedings, because, as noted *supra*, it contacted Hathiramani's bankruptcy counsel by letter three times in response to notices that it received regarding the ongoing proceedings. ECF No. 67-4, Ex. D. Consequently, Northwestern is not entitled to relief under § 523(a)(3)(A). *See Long v. Sargent*, No. CV 20-2203, 2021 WL 753923, at *4 (D.N.J. Feb. 26, 2021) (creditor not entitled to relief under § 523(a)(3) where actual notice was given by opposing counsel and filing in separate case listing name of debtor, their bankruptcy counsel, and the bankruptcy case number); *see also, e.g., United States v. Westley*, 7 F. App'x 393, 405 (6th Cir. 2001) ("[T]he moment the creditor receives notice or knowledge of the bankruptcy case, § 523(a)(3)(A) ceases to provide the basis for an exception from discharge." (citation omitted)). While Northwestern contends that it did not receive a reply to its request for additional information from Hathiramani's counsel to help locate its internal records pertaining to the matter, it cites to no authority suggesting that Hathiramani or his counsel had any duty to do so. *See In re Venuto*, 629 B.R. at 339 n.11 ("[A]s long as a creditor is listed in the debtor's initial schedules, the creditor is presumed to be responsible for ascertaining the specific claim it holds." (alteration in original) (citation omitted)).

Because the Court finds that the June 2004 Judgment was properly scheduled and that Northwestern received actual notice of the Bankruptcy Proceedings, Northwestern is not entitled to relief under § 523(a)(3)(A). For these same reasons, the Court finds that

Northwestern fails to raise extraordinary circumstances warranting relief under Rule 60(b)(6). *See In re Coletta*, 380 B.R. 140, 146 n.15 (Bankr. E.D. Pa. 2007).

Finding none of Northwestern's arguments in opposition persuasive, the Court finds the cancellation of the June 2004 Judgment pursuant to N.J.S.A. § 2A:16-49.1 to be appropriate and will **grant** Hathiramani's Motion to Reopen.

### D. Northwestern's Motion to Renew the June 2004 Judgment

On June 11, 2024, Northwestern moved to renew and revive the June 2004 Judgment pursuant to N.J.S.A. § 2A:14-5 ("Motion to Renew"). ECF No. 71. "New Jersey law provides that execution on a judgment may issue, without a revival of the judgment, at any time within 20 years after its entry." *Consol. Rail Corp. v. All. Shippers, Inc.*, No. CIV. 93-1327, 2015 WL 1759581, at *1 (D.N.J. Apr. 16, 2015) (citing § 2A:17-3).

However, § 2A:14-5 "provides a mechanism for a judgment holder to revive or extend the judgment for an additional twenty years." *Sweeney v. Seneca Lab'ys, Inc.*, No. CV933479, 2016 WL 2996613, at *1 (D.N.J. May 24, 2016). Under § 2A:14-5, "[a] judgment in any court of record in this state may be revived by proper proceedings . . . within 20 years next after the date thereof, but not thereafter." *Id.* (alterations in original) (quoting § 2A:14-5). In order to revive a judgment under § 2A:14-5, a party must show that, among other things, the "judgment is valid and subsisting[.]" *Id.* at 2 (quoting *Adamar of New Jersey, Inc. v. Mason*, 942 A.2d 878, 879 (N.J. App. Div. 2008)).

Because the Court finds the cancellation of the June 2004 Judgment pursuant to N.J.S.A. § 2A:16-49.1 to be appropriate, the Court will **deny** Northwestern's Motion to Renew.

### V.    CONCLUSION

For the foregoing reasons, Hathiramani's Motion to Reopen, ECF No. 60, is **GRANTED** while Northwestern's Motion to Renew, ECF No. 71, is **DENIED.** An appropriate Order accompanies this Opinion.

WILLIAM J. MARTINI, U.S.D.J.

Date: July _2_, 2024